UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

NORMA ANDREA GOMEZ HAVERSTOCK,  )  No. CV 14-02452-VBK
                                )
            Plaintiff,          )  MEMORANDUM OPINION
                                )  AND ORDER
      v.                        )
                                )  (Social Security Case)
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security,                       )
                                )
            Defendant.          )
_____)

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

    Plaintiff raises the following issues:

    1.    Whether the Administrative Law Judge ("ALJ") erred in

|   | determining that Plaintiff's medically determinable impairments of depression and anxiety are not severe; |
|---|---|
| 2. | Whether the ALJ gave proper weight to Plaintiff's treating physician; and |
| 3. | Whether the ALJ included all of Plaintiff's impairments when assessing Plaintiff's residual functional capacity. |

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN FINDING THAT IMPAIRMENTS OF DEPRESSION AND ANXIETY ARE NOT SEVERE**

Following administrative denials of Plaintiff's October 20, 2011 application for Title II Disability Insurance Benefits ("DIB"), Plaintiff requested and received a hearing before an ALJ on October 15, 2012. (AR 31-62.) At that hearing, Plaintiff was represented by counsel, and testified, and in addition, the ALJ took testimony from a Vocational Expert ("VE").

Thereafter, on November 8, 2012, the ALJ issued an unfavorable Decision (AR 18-26), following which Plaintiff submitted additional evidence to the Appeals Council, which, in a March 4, 2014 Notice of Appeals Council Action, denied request for review. (AR 1-4.) This lawsuit ensued.

Plaintiff asserts that the ALJ erred by failing to find that her medically determinable mental impairments of depression and anxiety,

2

whether considered singly or in combination, are not severe because they do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (AR at 20.)

**A.  Applicable Law.**

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

SSR 85-16 suggests the following as relevant evidence:

"History, findings, and observations from medical

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

3

      sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show

"the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.

5

>In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

Social Security Ruling ("SSR") 96-8p makes the same point in distinguishing evidence supporting a rating of mental severity at Step Two, a Listing level impairment at Step Three, and the determination of an individual's MRFC at Step Four.

**B.   Analysis**.

Plaintiff first asserts that significant progress notes and evaluative documents in the record demonstrate that she is positive for anxiety, difficulty concentrating and difficulty maintaining sleep. (See JS at 5, citing AR 244, 246, 249, 253, 265, 274, 278, 453, 470, 477, and 479.)

Plaintiff asserts that the ALJ erred in giving considerable weight to a State Agency psychological consultant who found her mental impairments were not severe. (JS at 5.)

Plaintiff also asserts that the ALJ failed to even mention a consultative psychological examination ("CE") performed by Dr. Jimenez which appears in the record in the form of a Mental Residual Functional Capacity Questionnaire. (AR 446-450.)

Finally, Plaintiff cites as the "most compelling evidence" a

neuropsychological evaluation conducted by Dr. Saucedo which appears in the record in the form a Neuropsychological Evaluation filed in letter format on January 28, 2011 to an attorney, and reflecting neuropsychological evaluations conducted on December 8, 2010 and December 15, 2010. (AR 282-291.) As interpreted by Plaintiff, this assessment reflects that she suffers from very high levels of symptomocology and distress, significant levels of anxiety and depression and significant somatic preoccupation. Dr. Saucedo, Plaintiff asserts, diagnosed major depression, somatoform disorder, adjustment disorder and anxiety and PTSD scale quite high. (AR 289.)

     Clearly, the Step Two determination of whether an impairment is severe or non-severe is a threshold requirement. See <u>Fellon v. Yuckert</u>, 482 U.S. 137, 149-150 (1987). Nevertheless, not every medically determinable impairment is severe, and the mere diagnosis of an impairment does not equate to a finding of severity. With regard to mental impairments, the Court has noted in the preceding Applicable Law subsection, there are specific criteria which must be met in determining the existence of a severe mental impairment. See 20 C.F.R. § 404.1520a(c)-(d). Thus, there must be an evaluation based on evidence in the record as to the discrete areas including the following: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.

     In this case, the ALJ did in fact perform such an analysis. (AR 21.) With regard to daily activities, the ALJ relied upon Plaintiff's own self-reporting, both in her testimony at the administrative hearing, and statements she made to various medical providers. Plaintiff cooks, vacuums and cleans her house, waters plants and performs yard work, does laundry, drives a car, and goes out grocery

shopping. (AR 48-49, 161-164.) She took care of her mother every as a home health care aide. (AR 36, 48, 59.) She reported in her Function Report - Adult - Third Party, that she had no problems with her own personal care, and she indicated after her last physical therapy session that she had no complaints about performing activities of daily living. (AR 161, 218, 525.) Thus, the Court cannot find the ALJ's conclusion that Plaintiff only has mild restrictions in her activities of daily living is unsupported by substantial evidence.

With regard to the next area, social functioning, the ALJ also found only mild limitations. In so concluding, the ALJ referenced that Plaintiff gets along well with her family, friends and neighbors and others on a daily basis. (AR 21, 153-45, 164-65.) She also attended church, sang at choir, and went out alone to do gift shopping. (Id., citing AR 152-53, 163-64.) Despite the conclusion of Dr. Jimenez that Plaintiff has "marked" restrictions in accepting and responding to criticism from supervisors (AR 449), Plaintiff herself indicated that she gets along with authority figures. (AR 166.) Further, Dr. Jimenez found that Plaintiff was only minimally limited in her ability to get along with her coworkers. (AR 449.) Thus, the ALJ's conclusion that Plaintiff had only mild limitations in social functioning is supported by the evidence.

With regard to maintaining concentration, persistence and pace, Plaintiff substantially relies upon the conclusions of Dr. Saucedo, a psychologist, but in that report, the indication is that the "vast majority" of Plaintiff's neuropsychological evaluation findings were intact. (AR 283-91.) She performed well on most of her cognitive tests and was within normal limits on a mini mental state examination. (AR 286-89.) Her thought processes were clear and coherent. (AR 286.)

While she sometimes complained to a physician's assistant that she had difficulty functioning and concentrating, as the Commissioner notes, there does not appear to be a clinical correlation to these subjective complaints. Indeed, aside from these isolated instances of subjective complaints, Plaintiff repeatedly denied having these symptoms, and the physician's assistant noted negative signs for difficulty concentrating and for poor or worsening memory. (AR 453-54, 471, 477-79.) In addition, from the previously referenced Function Report, Plaintiff stated that she could pay attention "all day," and that she finishes what she starts. (AR 165.) Thus, the Court finds no error with regard to this third criteria for evaluation of mental state.

The fourth area, episodes of decompensation, was also addressed by the ALJ who indicated Plaintiff had never experienced any such episodes. Plaintiff does not provide any evidence that this finding was incorrect. (AR 21.)

The ALJ generally devalued Dr. Jimenez' examination because of its inconsistency with the medical record, which was cited in specific detail in the Decision.

While Plaintiff claims that the ALJ failed to even address the examination and conclusions of Dr. Saucedo, this is clearly not the case, as the Decision contains a specific reference to and evaluation of Dr. Saucedo's opinion. (AR 23.)

Finally, Plaintiff's contention that the ALJ improperly relied upon the opinion of a non-examining State Agency physician is not in fact supported by the record. In the ALJ's Decision, this physician's opinion was given considerable weight as being consistent with other clinical and diagnostic findings, and Plaintiff's own testimony. (AR 24-25.) This is a permissible technique, and the ALJ was entitled to

give weight to Dr. Smith's opinion on this basis.

For the foregoing reasons, Plaintiff's first issue is without merit.

**II**

**THE ALJ'S EVALUATION OF DR. VAHEDIFAR'S OPINION IS NOT ERRONEOUS**

In her second issue, Plaintiff contends that the ALJ failed to properly evaluate the opinion of Dr. Vahedifar, who treated her since May 8, 2009, continuing for several years. Plaintiff asserts that the ALJ's primary basis for rejection or depreciation of Dr. Vahedifar's opinion is that on the first day of treatment he listed her prognosis as good. (AR 23.)

The record does not support Plaintiff's characterization of the ALJ's Decision. In fact, the first thing to note is that the ALJ's discussion of Dr. Vahedifar's examination and conclusions takes up almost three pages of the nine-page Decision. (AR 22-24.) In her portion of the JS, the Commissioner summarizes in detail the examinations by Dr. Vahedifar, and also by his physician's assistant, for the point that his evaluations do not support conclusions leading to disability. (See JS at 18-20.) Plaintiff provides only a brief reply (JS 20-21), which essentially fails to address the Commissioner's summary. Without repeating each and every point discussed in the Decision, the Court concludes that the ALJ's evaluation is based on substantial evidence, and therefore, Plaintiff's second issue is without merit.

Plaintiff's third issue, which questions whether the ALJ included all of Plaintiff's impairments when assessing her residual functional capacity ("RFC"), can be subsumed within this discussion, because,

again, Plaintiff's argument substantially relies upon what she interprets as Dr. Vahedifar's opinions, and as to that, the Court has already substantiated the ALJ's evaluation of these opinions in its discussion of Plaintiff's second issue. Therefore, the Court deems that no further discussion is necessary, and accordingly, finds that Issue No. 3 is without merit.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: December 12, 2014           /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE